# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD NOVOTNY, III,

           Plaintiff,

v.

CITY OF WAUWATOSA, GEORGE SCHIMMEL, NICHOLE GABRIEL, TYLER L'ALLIER, MAYFAIR MALL SECURITY, and UNKNOWN MAYFAIR MALL SECURITY GUARD,

           Defendants.

Case No. 17-CV-160-JPS

**ORDER**

1. **INTRODUCTION**

    The plaintiff, Edward Novotny, III, ("Novotny"), who proceeds in this matter *pro se,* brought this action against the City of Wauwatosa (the "City"), two of its police officers, Tyler L'Allier ("L'Allier") and Nichole Gabriel ("Gabriel"), and City of Wauwatosa prosecutor George Schimmel ("Schimmel") (collectively, the "defendants")[1] for alleged violations of his civil rights. Specifically, Novotny claims that L'Allier and Gabriel violated his Fourth Amendment rights by stopping him without reasonable suspicion after they received a tip from a mall security officer that Novotny had driven under the influence into the mall parking lot. Novotny also claims that the City and Schimmel violated his Fourteenth Amendments by giving him a bench trial instead of a jury trial for his municipal citation and by allowing the introduction of evidence at the trial that contained errors.

---

[1] The corrected spellings of the individual defendants' names are taken from the defendants' summary judgment submissions.

Finally, Novotny alleges that the defendants conspired against him to violate his civil rights.[2]

On November 1, 2017, the defendants filed a motion for summary judgment, along with a supporting brief, proposed findings of fact, and four affidavits. (Docket #19-#25). Novotny requested, and was granted, an extension to file his response; on December 29, 2017, he filed two response briefs, an affidavit, and his own proposed findings of fact. (Docket #29-#32). The defendants replied on January 12, 2018. (Docket #33). For the reasons explained below, the defendants' motion will be granted and this action will be dismissed.

2. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-

---

[2]Novotny also named Mayfair Mall Security and an unknown Mayfair Mall security guard as defendants. He did not serve Mayfair Mall Security and his time to do so has long expired. *See* Fed. R. Civ. P. 4(m) (service must be made within 90 days of the complaint being filed). Mayfair Mall Security will be dismissed. As to the unnamed security guard, Novotny could have learned his identity during discovery; in fact, it appears Novotny addresses the guard by name in his brief opposing summary judgment. *See* (Docket #29 at 8). Novotny had more than ample opportunity to amend his pleading to name the guard as a defendant—who would then have to be served—if he intended to maintain a claim against him, and he did not. The unnamed guard will also be dismissed.

movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3. **FACTUAL BACKGROUND**

   3.1 **Plaintiff's Failure to Dispute Defendants' Proposed Facts**

The relevant facts are undisputed because Novotny failed to dispute them. Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In the defendants' motion for summary judgment, they warned Novotny about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #19 at 1-2). They also provided Novotny with copies of those Rules along with their motion. (Docket #19-1).

In connection with their motion, the defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #21). It contained short, numbered paragraphs concisely stating those facts they proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

As the party opposing the defendants' motion, Novotny was required to file "a concise response to the moving part[ies'] statement of facts" containing "a reproduction of each numbered paragraph in the moving part[ies'] statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" Civ. L. R. 56(b)(2)(B).

Novotny did not do this. He filed his own statement of proposed facts, (Docket #32), but he did not provide a response to the defendants' proposed facts. The effect of this failure is that, for the purpose of deciding summary judgment, the defendants' uncontroverted statements of material fact are deemed admitted. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *see also Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607–08 (7th Cir. 2008) ("[A] district court is entitled to demand strict compliance with [the local] rules for responding to a motion for summary judgment, and . . . a court does not abuse its discretion when it opts to disregard facts presented in a manner inconsistent with the rules.") (citation omitted); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will consider Novotny's proposed facts, (Docket #32), only to the extent they do not contradict the defendants' uncontroverted proposed facts, (Docket #21), and are not subject to dispute by the defendants, (Docket #34).

### 3.2 Relevant Facts

On the morning of February 5, 2015, Novotny was driving northbound on Interstate 41 in Wauwatosa, Wisconsin when he experienced car trouble. He exited the highway and pulled into the nearby Mayfair Mall parking lot. One of the wheels came off of his car before he reached the parking lot, and it remained in the road.

Novotny got out of his damaged car and began to walk away across the mall parking lot. A mall security guard saw this and, suspecting that Novotny was intoxicated, contacted the Wauwatosa Police Department.

Defendants Gabriel and L'Allier, both police officers with the Wauwatosa Police Department, were dispatched to the scene. When they arrived, the mall security officer pointed out the damaged car and identified Novotny as the driver, who was then walking toward the south end of the mall parking lot.

The officers made contact with Novotny and collected identifying information from his Illinois driver's license. They asked him what was going on, and he explained that he was driving to work when he experienced car trouble, and he was now walking to find an auto parts store for materials to fix his car's damaged wheel. While speaking with Novotny the officers could detect a strong odor of intoxicants coming from his person. They observed Novotny's eyes to be bloodshot and glossy. Novotny's speech was slurred. The officers asked Novotny if he had consumed any alcoholic beverages, and Novotny responded that he had two to four beers and some wine the previous night.

The officers then asked Novotny to participate in field sobriety tests, including a horizontal gaze nystagmus test, a walk and turn test, a one-leg stand test, and a recitation of the alphabet. Novotny was able to recite the alphabet without mistakes, but his performance on the other tests caused the officers to believe he was intoxicated. Novotny then agreed to give a breath sample to measure his level of intoxication, but his attempts to blow did not yield a sufficient sample.

L'Allier placed Novotny under arrest for driving while intoxicated. He was handcuffed and transported to the Wauwatosa Police Department for booking and processing. At the station, L'Allier asked Novotny to submit to a blood sample and Novotny refused. L'Allier issued Novotny a traffic citation for operating a motor vehicle while intoxicated ("OWI") and

a notice of intent to revoke operative privileges. This was Novotny's first offense for OWI.

Novotny requested a jury trial on his citation. The City of Wauwatosa municipal court before which the citation was pending sent the case to the Milwaukee County Circuit Court for a trial. Neither Novotny nor the City of Wauwatosa appeared before the circuit court for a hearing set for July 17, 2015, and the circuit court remanded the case to the municipal court that day.

The municipal court, apparently after resolving some scheduling conflicts with the parties, scheduled a bench trial for June 15, 2016. Defendant Schimmel participated as the City of Wauwatosa prosecutor. Novotny and L'Allier testified as witnesses. Novotny argued that Gabriel and L'Allier did not have reasonable suspicion to stop him in the Mayfair Mall parking lot and conduct the questioning that eventually led to his arrest for OWI.

After the close of evidence and arguments, the court determined that the officers acted consistently with Novotny's rights during the stop and arrest and that the City of Wauwatosa proved by clear and convincing evidence that Novotny had operated a vehicle under the influence of intoxicants. Novotny was found guilty of violating Wisconsin Statutes section 346.63(1)(a), the law prohibiting driving under the influence. The court notified Novotny of his right to appeal within 20 days.

Novotny filed a notice of appeal with the municipal court on July 5, 2016, but never served the notice on the City of Wauwatosa, as he was required to do to perfect his appeal. The case was transferred to Milwaukee County Circuit Court, the first-level appellate court for such a case, and Schimmel moved for dismissal due to Novotny's failure to serve. The circuit

court entered an order on August 29, 2016 granting the motion and dismissing the case. Novotny did not appeal the circuit court's order.

4. **ANALYSIS**

Novotny brings claims against L'Allier, Gabriel, and the City under the Fourth Amendment, based on his detention in the Mayfair Mall parking lot, and against Schimmel and the City under the Fourteenth Amendment, for denial of a jury trial and admission into evidence at his municipal court trial of a police report containing errors. Novotny also claims that Schimmel, the defendant police officers, and the Mayfair Mall security guard who called the police conspired against him to violate his Fourth and Fourteenth Amendment rights.

The defendants argue that Novotny's Fourth and Fourteenth Amendment claims must be dismissed because the issues underlying them were decided in the municipal court trial and Novotny did not appeal. They also argue that, as to the Fourth Amendment claim, the defendant officers are entitled to qualified immunity and, as to the Fourteenth Amendment claim, Novotny was given all the process he was due. As to the conspiracy claim, they argue that it cannot stand without an underlying constitutional violation, of which there is none. Finally, they argue there is no evidence to support a claim against the City.

**4.1  Fourth Amendment claim**

Novotny claims that L'Allier and Gabriel violated his Fourth Amendment right to be free from unreasonable searches and seizures by stopping him in the Mayfair Mall parking lot without reasonable suspicion that he had been, or was about to be, engaged in criminal activity. The defendants argue that Novotny is collaterally estopped from litigating the

issue of reasonable suspicion because it was already decided against him at his municipal court trial.

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). Collateral estoppel applies only when the party against whom the earlier decision is being asserted had a "full and fair opportunity" to litigate the issue in question. *Id.* The Supreme Court held in *Allen v. McCurry* that a defendant can invoke collateral estoppel in a civil case brought under Section 1983 to bar relitigation of an issue that was already decided against the plaintiff in an earlier criminal proceeding. 449 U.S. 90, 104–05 (1980).

Federal courts apply the forum state's collateral estoppel law to determine whether a Section 1983 claim is precluded by a prior state judicial proceeding. *See Haring v. Prosise,* 462 U.S. 306, 313-14 (1983); *see also Watkins v. Martin*, 691 F. App'x 266, 268 (7th Cir. 2016). In Wisconsin, courts employ a two-step process to determine whether issue preclusion is appropriate: first, the court determines whether preclusion can be applied as a matter of law, and, second, the court determines whether applying preclusion would be fundamentally fair. *In re Estate of Rille ex rel. Rille*, 728 N.W.2d 693, 702 (Wis. 2007).

For issue preclusion to apply as a matter of law, the issue alleged to be precluded must have been actually litigated and decided in the prior proceeding, and the other court's decision on the issue must have been essential to the judgment. *Id.*

The defendants are correct that the issue animating Novotny's Fourth Amendment claim in this case was actually litigated and decided in the June 15, 2016 municipal court trial. According to the trial transcript, the municipal judge ruled that:

> [T]he officers did have the authority and the legal authority to approach you and, at which time . . . the officer did smell alcohol. And at that point, I mean, you admitted that you were driving the vehicle and as to what happened with the wheel, and so that's established. And then, they had the right to give you the tests, which you didn't pass, and afterwards then the breath tests that you were unable to perform and you refused the blood test. . . . So, under all those circumstances, I'm satisfied that it's been shown by clear and convincing evidence, sir, that you were operating under the influence.

(Docket #24-7 at 31).

The municipal judge entertained Novotny's argument that the officers stopped him without reasonable suspicion and, after having heard testimony from Novotny and L'Allier, disagreed. Based on his finding of reasonable suspicion, the municipal judge then considered the evidence that was obtained during the search. Based on that evidence, he found that Novotny was guilty of the offense of driving under the influence. Therefore, the municipal judge's reasonable suspicion finding was essential to the judgment in that case. *See Kaprelian v. Bowers*, 460 F. App'x 597, 600 (7th Cir. 2012) (interpreting Wisconsin collateral estoppel law and finding preclusion applicable in plaintiff's Section 1983 case based on Fourth Amendment violations where state court decided reasonableness of search in denying a suppression motion).

Even where, as here, the legal elements for preclusion are met, Wisconsin courts will apply issue preclusion only if doing so would be

fundamentally fair. *Id.* (citing *Rille,* 728 N.W.2d at 702–03). Wisconsin courts look to factors such as

> whether the party opposing issue preclusion could have obtained review of the earlier adverse decision, whether the earlier proceeding was of significantly lower quality or scope, whether the parties' burdens have shifted since the earlier proceeding, and whether the party opposing preclusion lacked an adequate incentive or opportunity to litigate the issue fully in the earlier proceeding.

*Id.* These factors "are illustrative; they are not exclusive or dispositive." *Rille,* 728 N.W.2d at 707. The most important factor is "fairness to the party against whom preclusion is asserted, and this fairness determination should be made on a case-by-case basis." *Id.* (quotation omitted).

There is nothing unfair about applying preclusion in this case. Novotny argued the issue of reasonable suspicion to the municipal court and he failed to follow the necessary procedures to appeal that court's adverse ruling. There is no reason to suspect that the quality or extent of the municipal court trial fell below the threshold required to justify giving the ruling preclusive effect. Novotny had an incentive to vigorously challenge the search in that proceeding because a successful challenge could have saved him from a finding of guilt. Finally, the burden of proof has not shifted in his favor; the City proved by clear and convincing evidence in municipal court that the stop was lawful, and here Novotny must prove by a preponderance of evidence that he was stopped without reasonable suspicion. *See Kaprelian*, 460 F. App'x at 600.

The issue underlying Novotny's Fourth Amendment claim was already litigated and decided in a prior proceeding, and therefore his Fourth Amendment claim in this case is precluded by the doctrine of

collateral estoppel. The Court will grant the defendants' motion for summary judgment on this claim.[3]

### 4.2 Fourteenth Amendment claim

Novotny claims that Schimmel and the City violated his Fourteenth Amendment right to due process by denying him a jury trial and allowing a police report that he says contained errors to be used as evidence against him in the municipal court trial.

This claim is riddled with deficiencies. First, Novotny cannot sue Schimmel for actions taken in his role as a City prosecutor because he enjoys absolute prosecutorial immunity. *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976). A prosecutor is immune for damages arising out of conduct that falls within the scope of his prosecutorial duties. *See Kalina v. Fletcher,* 522 U.S. 118, 127 (1997) ("[I]n determining immunity, we examine the nature of the function performed, not the identity of the actor who performed it."). "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields v. Wharrie,* 672 F.3d 505, 510 (7th Cir. 2012) (citing *Imbler,* 424 U.S. at 430). Introducing evidence at trial—even evidence containing errors, as Novotny believes was the case—certainly falls within the scope of Schimmel's prosecutorial duties and he is therefore protected by immunity. This would be true even if Novotny is right that Schimmel introduced evidence he knew to be false. *See Burns v. Reed*, 500 U.S. 478, 485 (1991) (prosecutorial immunity extends to the knowing use of false testimony).

---

[3]Because the Court finds Novotny is estopped from pursuing his Fourth Amendment claim, the Court need not consider the defendants' entreaty for qualified immunity as to this claim.

Novotny also cannot recover from the City for having been given a bench trial instead of a jury trial, or for Schimmel's introduction of unfavorable evidence during the bench trial. Local government entities can be held liable under Section 1983 for the unconstitutional conduct of their employees only if "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Novotny does not allege, much less offer, evidence to support a claim that the City has an official policy or custom that led to the deprivation of his constitutional rights, or that someone with final policy-making authority deprived him of his constitutional rights. Novotny's allegations about legal errors that are specific to his municipal court proceeding do not support *Monell* liability for the City.

Thus, neither of the defendants Novotny targets with his Fourteenth Amendment claim can bear liability. Even if the Court were to reach the merits of his Fourteenth Amendment claim, Novotny would fare no better. As to his claim that he was denied the right a jury trial, Novotny cannot succeed because he had no such constitutional right for his OWI charge. The Fourteenth Amendment guarantees a right to trial by jury in all criminal cases that, were they to be tried in a federal court, would come within the Sixth Amendment's guarantee. *Duncan v. Louisiana*, 391 U.S. 145, 149-50 (1968). The Sixth Amendment right to a jury trial extends to those charged with crimes or offenses that are "serious" and not "petty." *Id.* Generally speaking, crimes carrying possible penalties up to six months are

considered petty and do not require a jury trial. *Id.* at 159. In Wisconsin, a first-offense OWI is punishable only by forfeiture, not imprisonment. *State v. Verhagen*, 827 N.W.2d 891, 896 (Wis. Ct. App. 2013) (citing Wis. Stat. §§ 346.63(1); 346.65(2)(am)1). It is not a "crime" in Wisconsin. *Id.* As a first-time OWI offender in Wisconsin, Novotny was not constitutionally entitled to trial by a jury. *See Blanton v. City of N. Las Vegas, Nev.*, 489 U.S. 538, 539-40 (1989) (persons charged for violating Nevada law for driving under the influence of alcohol, which was punishable by a minimum term of two days' imprisonment and a maximum term of six months' imprisonment, not constitutionally entitled to jury trial).

Finally, Novotny's allegation that a police report containing errors was admitted into evidence in his municipal trial does not give rise to a Fourteenth Amendment claim either. While it is true that a plaintiff can maintain a Fourteenth Amendment due process claim for evidence fabrication against a police officer or against a prosecutor acting in an investigatory capacity, *see Saunders-El v. Rohde*, 778 F.3d 556, 559-61 (7th Cir. 2015), Novotny has not alleged or shown that anyone fabricated material evidence. The "error" Novotny points out is merely typographical—L'Allier's police report apparently states the arrest date, in different places, as February 4, 2014, February 5, 2015, and February 6, 2015, when the actual arrest date was February 5, 2015. (Docket #1 at 13). This error did not deprive Novotny of any process he was due, however. He pointed out the error during the municipal court trial. *See* (Docket #24-6 at 17). The municipal judge did not rely on the erroneous arrest dates to find Novotny guilty by clear and convincing evidence. (Docket #24-7 at 31). If Novotny believes the municipal judge committed legal error by finding him guilty

despite the typos in L'Allier's police report, he should have followed through with his appeal of that order in the circuit court.

On the undisputed facts before the Court, the defendants are entitled to judgment as a matter of law on Novotny's Fourteenth Amendment due process claim. Their summary judgment motion as to this claim will be granted.

### 4.3 Conspiracy

Finally, Novotny alleges that Schimmel, the defendant police officers, and the Mayfair Mall security guard who called the police conspired against him to violate his Fourth and Fourteenth Amendment rights. However, conspiracy is not an independent basis of liability in Section 1983 actions. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). A constitutional deprivation is a necessary predicate to a Section 1983 conspiracy action. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) (An "actual denial of a civil right is necessary before a [conspiracy] cause of action arises."). Because Novotny cannot prove an underlying constitutional violation, his conspiracy claim must be dismissed as well.[4]

### 5. CONCLUSION

The Court finds that Novotny has failed to proffer evidence raising triable issues of fact as to his claims in this case. Rather, on the undisputed

---

[4] Novotny's complaint also arguably raises a claim under Article I, Section 11 of the Wisconsin Constitution, which prohibits unreasonable searches and seizures. (Docket #1 at 11). Assuming he intended to bring a state constitutional claim in addition to his federal constitutional claims, the Court will, having resolved all federal claims, decline to exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c).

facts and evidence in the record, the Court must grant the defendants judgment as a matter of law and dismiss this action.[5]

Accordingly,

**IT IS ORDERED** that defendants Mayfair Mall Security and Unknown Mayfair Mall Security Guard be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that the defendants' motion for a status conference (Docket #36) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #19) be and the same is hereby **GRANTED** as to all federal law claims raised in the plaintiff's complaint;

**IT IS FURTHER ORDERED** that all federal law claims raised in the plaintiff's complaint (Docket #1 at 11-17) be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that the state law claim raised in the plaintiff's complaint (Docket #1 at 11) be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[5] Because this case will be dismissed in its entirety, the defendants' recently-filed motion for a pre-trial status conference, (Docket #36), will be denied as moot.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge